UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ISMAEL DEL REAL TORRES,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:20-CV-90-JVB-JEM |
| ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Ismael Del Real Torres on March 5, 2020, and Plaintiff's Memorandum of Law Challenging the Commissioner's Adverse Disability Determination [DE 16], filed August 10, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 18, 2020, the Commissioner filed a response, and on October 1, 2020, Plaintiff filed a reply.

On April 15, 2020, an Order [DE 6] was entered referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the decision of the Administrative Law Judge be reversed and the case remanded for further proceedings.

**I.    Background**

On October 12, 2017, Plaintiff filed an application for benefits alleging that he became disabled on October 1, 2016, and later amended the alleged date to March 30, 2016. Plaintiff's

1

application was denied initially and upon reconsideration. On February 7, 2019, Administrative Law Judge ("ALJ") James E. MacDonald held a hearing at which Plaintiff, with an attorney and a Spanish interpreter, and a vocational expert ("VE") testified. On March 19, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of Social Security Act on March 31, 2016.

2. The claimant did not engage in substantial gainful activity during he period from his alleged onset date of March 30, 2016, through his date last insured of March 31, 2016.

3. Through the date last insured, the claimant had severe impairments: diabetes mellitus with ulcerations, chronic kidney disease, left food arthritis, and obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: he could never climb ladders, ropes, or scaffolds; he must have avoided all exposure to unprotected heights or moving mechanical parts; he could have occasional foot controls with the left lower extremity; and he could perform frequent balancing, stooping, and kneeling, but only occasional crouching and crawling.

6. Through the date last insured, the claimant was unable to perform past relevant work.

7. The claimant was 53, which is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant is not able to communicate in English and is illiterate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

2

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, from March 30, 2016, the alleged onset date, through March 31, 2016, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,*

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (*O'Connor-Spinner I*); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner I*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the RFC was not supported by substantial evidence, the ALJ erred in rejecting Plaintiff's testimony, and failed to build a logical bridge between the evidence and his conclusions. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

Plaintiff argues that the ALJ used boilerplate language to describe his assessment of

4

Plaintiff's subjective complaints. An ALJ is not permitted to

> make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [ALJs] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304 at *9 (emphasis added). In this case, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence in the record for the reasons explained in this decision." AR 27.

Plaintiff argues that the ALJ did not, in fact, include any explanation of this statement in his opinion, and did not explain which specific allegations of limitation he did or did not find to be consistent with the medical evidence. In particular, Plaintiff asserts that he had difficulty standing and walking, explaining that he gets blisters on his feet and experiences pain and swelling, and the ALJ noted that testimony but did not explain why that assertion was not credible. The ALJ described medical evidence, including the blisters and ulcers on Plaintiff's feet, but noted he "displayed a normal gait" and did not have cyanosis, clubbing, or edema. The ALJ did not explain why the fact that Plaintiff did not limp during a doctor's exam meant that he did not have difficulty standing and walking for longer periods of time. The ALJ did not rely on the evidence of a medical professional for this conclusion; the ALJ gave no weight to the opinions of the state agency reviewers and did not identify any other medical opinion regarding Plaintiff's work-related abilities. Plaintiff also argues that the ALJ misinterpreted some of the medical evidence he analyzed. In particular, he

5

points out that the term "Type 2 diabetes mellitus without complications" is a diagnostic code for billing rather than a statement of Plaintiff's physical capacity. The ALJ ignored the evidence of complications in the same medical statements, even the same sentence, including reference to uncontrolled blood sugar and kidney disease secondary to uncontrolled diabetes mellitus. *See, e.g.*, AR 371-72 ("Assessment: Type 2 diabetes mellitus without complications (E11.9); Impression: his [blood sugar] remains uncontrolled . . . Conclusion: CKD II [Chronic Kidney Disease stage II] secondary to DM [Diabetes Mellitus] with nephrotic range proteinuria; DM [Diabetes Mellitus] uncontrolled."). The ALJ either cherry-picked evidence to support his assessment or substituted his own judgment for that of a medical professional, or both, but neither is appropriate. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor when he ignored expert opinions to arrive at his own, incorrect, interpretation of the medical evidence"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The Court cannot determine how Plaintiff's reported symptoms were evaluated and cannot determine whether the ALJ's decision about Plaintiff's symptoms is consistent with the evidence. SSR 16-3p, 2017 WL 5180304 at *9. In addition, the Court cannot determine how the ALJ incorporated all of Plaintiff's impairments into the RFC. For example, he found that Plaintiff has a history of ulcers with diabetes, and that he had ulcers and/or blisters on both feet during the relevant time period. Plaintiff asserted that he had difficulty standing or walking for more than a few hours, and that ulcers developed if he spent more than a few hours on his feet, limitations that are inconsistent with the finding that he could perform medium or heavy work. In fact, only a few weeks

6

after Plaintiff's date last insured, he had ulcerations on both feet, with gangrene, that required multiple physician visits and treatment over several weeks. AR 356-360. The ALJ stated that he incorporated Plaintiff's physical limitations in the RFC, but did not include any walking or standing limitations and only limited use of foot controls for the left extremity, leaving the Court unable to follow the logic between the evidence to the ALJ's conclusion. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

Plaintiff also argues that the ALJ ignored evidence in the record of Plaintiff's neuropathy, including a nerve conduction study that demonstrated nerve conduction abnormalities prior to Plaintiff's disability date. Plaintiff argues that no medical examiner reviewed the study or explained how the abnormalities in the results would affect Plaintiff's ability to work. As described above, the ALJ is reminded of the requirement to obtain additional medical opinions as necessary rather than to attempt to interpret medical records himself. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (remanding because ALJ impermissibly interpreted medical results and noting that "[t]he ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion,"); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000) (holding that the ALJ's error in interpreting medical records could have been avoided by seeking an updated medical opinion); *Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

The Court also notes that the ALJ was required to "consider the limiting effects of obesity when assessing a person's RFC," analyzing whether "the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2p, 2019 WL 2374244, *3-4 (May 20, 2019). The ALJ mentioned Plaintiff's obesity and stated

7

that "when examining the claimant's obesity in conjunction with other severe impairments, I find that none of the listings were met or medically equaled," and that he "considered the claimant's obesity when assessing his residual functional capacity," but he did not explicitly address how his obesity might exacerbate his other impairments, despite Plaintiff's arthritis and tendency toward foot ulcers. "SSR 19-2p explains obesity can exacerbate limitations in sitting, standing, walking, lifting, kneeling, and crouching. It also describes increased stress on weight-bearing joints." *Janet F. v. Saul*, No. 4:19CV61, 2020 WL 1443783, at *8 (N.D. Ind. Mar. 23, 2020) (citing SSR 19-2p). The Court recommends that on remand the ALJ be reminded of the requirement to consider, and to explain the consideration of, how Plaintiff's obesity exacerbates his other impairments, and how that is taken into account in the RFC.

The ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case, leaving the Court unable to follow the reasoning behind the RFC, and raising concerns that the ALJ substituted his own medical judgment for that of a trained physician in interpreting the medical records without assistance. The Court recommends that this case be remanded for the ALJ to thoroughly explain how Plaintiff's claimed limitations, both alone and in combination, are either incorporated into the RFC or found to be unsupported by the medical record.

### IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Memorandum of Law Challenging the Commissioner's Adverse Disability Determination [DE 16] and **REMAND** this matter for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is submitted pursuant to 28 U.S.C. 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 14th day of June, 2021.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record
Judge Joseph Van Bokkelen